IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

5050 TUXEDO, LLC,

    Plaintiff,

v.

STEPHEN W. NEAL,

    Defendant.

Case No.: GJH-16-1849

## MEMORANDUM OPINION

Plaintiff 5050 Tuxedo, LLC, brings this case against Defendant Stephen W. Neal, seeking to enforce a statutory right to redeem real property seized by the Internal Revenue Service ("IRS") and subsequently sold to Defendant at a public tax sale. ECF No. 1.[1] Pending before the Court are the following motions: Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 6; Defendant's Motion to Strike Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment, ECF No. 8; and Defendant's Motion to Strike Tyrone Pate's Affidavit, ECF No. 10. These issues have been fully briefed and a hearing is unnecessary. Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, the Court will convert Defendant's Motion to Dismiss into a Motion for Summary Judgment and grant it in full. Furthermore, the Court will grant Defendant's Motion to Strike Plaintiff's Response in Opposition and will deny as moot Defendant's Motion to Strike Tyrone Pate's Affidavit.

---

[1] K. Neal International Trucks, Inc. was initially named as a second defendant in this case but was voluntarily dismissed by Plaintiff on June 28, 2016. ECF No. 5.

## I.    BACKGROUND[2]

Plaintiff seeks ownership of real property, presently in the Defendant's possession, located at 5050 Tuxedo Road, Hyattsville, Maryland 20781("the Property"). ECF No. 1 ¶ 51. The Property was previously owned by Wamo Welding, Inc. ("Wamo"). *Id.* ¶ 11. Because Wamo failed to pay state and federal taxes, the Property was subject to several tax liens. *Id.* ¶ 12. Pursuant to its authority under 26 U.S.C. § 6331(a)-(b), the IRS provided notice of its intent to seize and sell the Property to collect sufficient funds to re-coup the unpaid federal taxes. *Id.* ¶ 13. The IRS held a sale of the Property on October 21, 2015. ECF No. 6-4 at 2; ECF No. 6-5 at 2.[3] Defendant was the successful bidder and was issued a "Certificate of Sale of Seized Property" from the IRS. ECF No. 1 ¶ 15.

Prior to the tax sale, on October 2, 2015, Wamo and Winston Marshall[4] executed a "Commercial Contract of Sale" with Plaintiff, to provide Plaintiff with an assignment and interest in the Property sufficient to redeem the Property pursuant to federal law. *Id.* ¶¶ 9-10. On October 24, 2015, a few days after the public auction, Plaintiff entered into an agreement to lease the Property to Mr. Marshall. *Id.* ¶ 16.

According to the Complaint, the IRS identified April 18, 2016 as the final date to redeem the Property, but "the parties" agreed to extend the time for redemption beyond this deadline to allow Plaintiff to "close the transaction." *Id.* ¶¶ 18-19. Specifically, Plaintiff alleges that on April 18, 2016, David Carris, Esq.,[5] presumably on behalf of the Plaintiff, emailed Defendant, requesting instructions for where to wire money in order to redeem the Property. *Id.* ¶ 20.

---

[2] Unless stated otherwise, all facts are taken from Plaintiff's Complaint and are accepted as true.

[3] The Complaint alleges that the sale was held on October 16, 2015. ECF No. 1 ¶ 14. Defendant attaches the "Notice of Public Auction Sale" and "Receipt for Deposit," which list the date of sale as October 21, 2015. ECF No. 6-4 at 2; ECF No. 6-5 at 2.

[4] The Complaint does not explain Winston Marshall's role, if any, with Wamo or Plaintiff.

[5] As with Mr. Marshall, the Complaint does not explain Mr. Carris' role.

Defendant forwarded the email to his employee, Sharon Neal, who provided the bank and wiring information to Plaintiff at 5:27 p.m. that same day. *Id.* ¶ 22. On the following day, April 19, 2016, Plaintiff paid Defendant $244,145.74, which the IRS had determined was the amount needed to redeem the property. *Id.* ¶ 23. However, Defendant rejected Plaintiff's attempt to redeem the property and returned the transferred funds stating that Plaintiff's attempted redemption occurred after the 180-day statutory redemption period had expired. *Id.* ¶ 25.

Plaintiff initiated this case on June 3, 2016, claiming that Defendant's refusal to accept its redemption breached their agreement to extend the statutory redemption period, and thus, violated its right to redeem the property pursuant to 26 U.S.C. § 6337. *Id.* ¶ 39. In addition to requesting damages for their breach of contract claim, Plaintiff alternatively argues that it has "no adequate remedy at law," and requests that the Court specifically enforce the contract and order Defendant to transfer title and possession of the Property to Plaintiff. *Id.* ¶ 40. Plaintiff also brings a state law claim for quiet title, alleging that its claim is superior to that of Defendant and requesting that the Court declare Plaintiff the "absolute owner" of the Property. *Id.* ¶¶ 49-51.

On June 29, 2016, Defendant filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 6-1 at 19-28. Plaintiff responded on August 1, 2016, ECF No. 7, and Defendant promptly filed a Motion to Strike Plaintiff's Response as untimely, ECF No. 8. On August 18, 2016, Defendant filed a Motion to Strike the affidavit of Tyrone Pate, which had been submitted by Plaintiff with its Response, ECF No. 10. That same day, Defendant also submitted a Reply in Support of its Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 11.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555) ("a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of a cause of action's elements will not do.").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to

resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal

quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must

accept as true all of the factual allegations contained in the complaint," and must "draw all

reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*

*v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks

omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v.*

*Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as

factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual

allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v.*

*Hirst,* 604 F.2d 844, 847 (4th Cir. 1979).

Defendant's motion is styled as a Motion to Dismiss, or in the Alternative, for Summary

4

Judgment under Fed. R. Civ. P. 56. If the Court considers materials outside the pleadings, as the Court does here, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.,* 149 F.3d 253, 260-61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

However, summary judgment should not be granted if the nonmoving party has not had the opportunity to discover information that is essential to his opposition to the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n.5, (1987). If the nonmoving party feels that the motion is premature, that party can invoke Fed. R. Civ. Pro. 56(d). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986). Under Rule 56(d), the Court may deny a motion for summary judgment if the non-movant shows through an affidavit that, for specified reasons, he or she cannot properly present facts, currently unavailable to him or her, that are essential to justify an opposition. Fed. R. Civ. Pro. 56(d). "'[T]he failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods Ltd. v. Sixty Internet Domain Names,* 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted). But a failure

to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court served as the functional equivalent of an affidavit." *Id.* at 244-45 (citations and internal quotation marks omitted).

Here, Plaintiff has not filed an affidavit under Rule 56(d) or made an equivalent showing of the need for more discovery. Thus, the Court will convert Defendant's Motion to Dismiss into a Motion for Summary Judgment.

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322-23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986).

6

When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.  DISCUSSION

### A.  Defendant's Motion to Strike Plaintiff's Response

As a preliminary matter, the Court will first address Defendant's Motion to Strike Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 8. Although Plaintiff's Response was due on July 13, 2016, it was not filed until August 1, 2016. ECF No. 7. Rather than moving to extend the deadline, Plaintiff includes a "Preliminary Statement" in its Response, asking the Court to accept its memorandum because a scheduling error caused it to be filed late.

Pursuant to Federal Rule of Civil Procedure 6(b), "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). To date, Plaintiff has failed to move for an extension of time. But even if the Court were to construe Plaintiff's "Preliminary Statement" as a Motion for Extension, such an extension, requested after the filing deadline, would only be available upon a showing of "excusable neglect," which Plaintiff fails to demonstrate. *Id.*

Excusable neglect is an "equitable [inquiry]," taking into consideration "(1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith." *Shuler v. Prince George's Cty.*, No. PWG-13-3373, 2014 WL 5023214, at \*1-2 (D. Md. Oct. 7, 2014) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993)). In weighing these factors, the

reason for the delay is the "most important" issue for the Court to consider, *id.* (quoting *Thompson v. E.I. DuPont de Nemours & Co.,* 76 F.3d 530, 534 (4th Cir. 1996)), and "a district court should find excusable neglect only in the *extraordinary cases* where injustice would otherwise result." *Symbionics Inc. v. Ortlieb*, 432 F. App'x 216, 220 (4th Cir. 2011) (emphasis in the original).

Here, Plaintiff has failed to allege any extraordinary circumstances warranting an extension of its time to respond, merely requesting that the Court accept the late response because of a scheduling error. Yet, the reason for this error is unclear. In explaining the situation, Plaintiff first suggests that it purposefully waited to file to allow Defendant to correct alleged misrepresentations in the record. If this was the intention, Plaintiff could have requested a brief extension from the Court. Plaintiff then appears to offer an alternative rationale for its untimely filing, stating that counsel drafted a response and then scheduled the filing for after he returned from vacation. Either rationale does nothing more than present "precisely the sort of 'run-of-the-mill inattentiveness by counsel' that [courts] have consistently declined to excuse in the past." *Id.* (quoting *Thompson,* 76 F.3d at 535). Thus, the Court will grant Defendant's Motion to Strike Plaintiff's Response.[6]

### B. Breach of Contract

Turning to the merits, Plaintiff alleges that it entered into a contract with Defendant to extend the statutory deadline to redeem the Property after it had been sold at a tax sale. Defendant denies that he entered into such a contract and further states that a contract to extend the statutory deadline would be unenforceable.

---

[6] The Court notes, however, that even if it had considered the substance of Plaintiff's Response, it would still grant Defendant's Motion.

The IRS may seize and put up for sale the real property of "any person liable to pay any tax" who "neglects or refuses to pay the same within 10 days after notice and demand." 26 U.S.C. § 6331(a)-(b). The property is then sold in accordance with the procedures outlined in 26 U.S.C. § 6335, which explains the requirements of notice to be provided to the owner of the property prior to the sale, details regarding the timing of the sale and the minimum price at which the property may be sold. *See* 26 U.SC. § 6335. A person whose property is subject to sale may redeem it before a sale has occurred by "pay[ing] the amount due…at any time prior to the sale…" 26 U.S.C. § 6337(a). After the tax sale has occurred, "the owners of any real property…or any person having any interest therein" have a right to "redeem the property sold… at any time within 180 days after the sale thereof." *Id.* § 6337(b)(1).

Here, the Property was sold at a tax sale on October 21, 2015. ECF No. 6-4 at 2. Thus, any right to redeem the Property needed to be exercised within 180 days of that date. 26 U.S.C. § 6337(b)(1). Both the plain language of the statute and Federal Rule of Civil Procedure 6(a), which governs the computation of time, support the interpretation that the day of the sale is not included when calculating the 180-day redemption window. *See* 26 U.S.C. § 6337(b)(1) ("within 180 days *after* the sale") (emphasis added); Fed. R. Civ. Pro. 6(a)(1)(A)("[w]hen the period is stated in days...exclude the day of the event that triggers the period."). The Tenth Circuit recently reached the same conclusion. *See Westland Holdings, Inc. v. Lay*, 462 F.3d 1228, 1230 (10th Cir. 2006) (adopting the decision in *Westland Holdings, Inc. v. Lay*, 392 F. Supp. 2d 1283, 1287 (D. Wyo. 2005), which held that "the language of § 6337(b) and the case law interpreting the statute indicate that the date of the sale should not be counted in determining the statutory redemption

9

period.").[7] Thus, any right to redemption expired on April 18, 2016, 180 days after the tax sale occurred.

Notably, Plaintiff does not dispute that his right to redemption expired on April 18, 2016. ECF No. 1 ¶ 18.[8] However, he states that the parties agreed to extend the statutory redemption "beyond the A[p]ril 18, 2016 date," *id.* ¶ 19, and alleges a breach of that contract. To establish a claim for breach of contract, Plaintiff must demonstrate that a contract was formed, Defendant breached the contract, and Plaintiff suffered damages as a result. *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 761 (D. Md. 2010) (citing *Parlette v. Parlette*, 88 Md. App. 628, 640 (Md. Ct. Spec. App. 1991)). "The formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Pruitt v. Bank of Am., N.A.*, No. CV TDC-15-1310, 2016 WL 337531, at *3 (D. Md. Jan. 28, 2016) (citations omitted). Here, Plaintiff has failed to put forward sufficient evidence to demonstrate that a contract was formed between 5050 Tuxedo, Inc. and Defendant.

In the Complaint, Plaintiff states that "the parties agreed to extend the time for redemption beyond the A[p]ril 18, 2016 date imposed by the Internal Revenue Service to allow the plaintiff to close the transaction." ECF No. 1 ¶ 19. However, the Complaint fails to identify

---

[7] The cases that Defendant cites in support of the proposition that the day of sale should be included when calculating the redemption period, *Howard v. Adle*, 538 F. Supp. 504, 509 (E.D. Mich. 1982), *Guthrie v. Curnutt*, 417 F.2d 764, 765 (10th Cir. 1969) and *Ballard v. U.S.*, 20 A.F.T.R.2d 5476 (D. Colo. 1967), are unpersuasive. *Howard* relies on a mistaken interpretation of *Guthrie,* which the Tenth Circuit clarified in the more recent *Westland Holdings, Inc.* case. *Compare Howard*, 538 F. Supp. at 509 ("The expiration date of the redemption period is calculated by including the date of sale.") (citing *Guthrie,* 417 F.2d at 765) *with Westland Holdings, Inc.*, 462 F.3d at 1229 ("In order to dispel any confusion, we now clarify that we did not count the day of sale as the first day of the one-year redemption period in *Guthrie*."). Further, a close reading of the dates in question in *Ballard*, shows that the court in that case actually started the redemption clock on the day after the sale. *See Ballard v. U.S.*, 20 A.F.T.R.2d 5476 (D. Colo. 1967) (holding that plaintiff's two attempts at redemption on March 6, 1967 and March 21, 1967 occurred 122 and 137 days after the November 4, 1966 sale).

[8] Any alleged reliance on statements made by the IRS referring to April 19, 2016 as the redemption date in the email exchange attached to Plaintiff's Response motion would be misplaced. ECF No. 7-5 at 2. *See Virdi Properties, Inc. v. United States*, No. 94-2060-CIV-DAVIS, 1995 WL 382694, at *2 (S.D. Fla. Feb. 27, 1995) ("Vicknair's claim of reliance on the June 9, 1994 letter from the Internal Revenue Service is not persuasive since this Court is without power to extend the statutory redemption period under the statute governing redemption of real estate following a sale, even for powerful equitable consideration.")

10

when this discussion occurred; the definite terms of the agreement, such as a new deadline for redemption of the Property; or what consideration was provided to Defendant in exchange for this concession. In an effort to fill this void, Plaintiff points the Court to an email exchange between an attorney, David Carris, and Defendant, on April 18, 2016, to support its allegation that a contract was formed. *Id.* ¶ 20. Defendant attached a copy of this email to its Motion, ECF Nos. 6-12 and 6-13.[9] The email requests that Defendant "provide to M[s]. Orem…your wiring instructions such that she can wire to you a refund of the monies you paid to the IRS regarding the Tuxedo Road property." ECF No. 6-12 at 2. Mr. Carris goes on to state that, "the settlement is scheduled for tomorrow. Please reach out to Ms. Orem at your earliest possible convenience." *Id.* Later that day, Defendant's employee, Sharon Richard, responded to the email and provided the requested information. ECF No. 6-13 at 2.[10]

Thus, the evidence in the record indicates that Mr. Carris, assumingly acting on Plaintiff's behalf, reached out to Defendant on the last day of the redemption period and Defendant responded to Plaintiff's email by providing him with instructions for how to wire money to redeem the Property. Notably, however, nothing in either the Complaint itself, or in the emails, supports a reasonable inference that Defendant assented to an agreement to *extend* the deadline to redeem the Property as Plaintiff claims. At most, the reference to "the settlement is scheduled for tomorrow" could generously be interpreted to infer that Defendant may have been aware that Plaintiff was not going to be able to tender the money until the following day. ECF No. 6-12 at 2. But the fatal flaw in Plaintiff's claim is that the email does not contain an

---

[9] The Court notes that Plaintiff attached the same email to its Motion, though it also included other emails in the exchange, none of which include additional facts to support Plaintiff's claim. *See* ECF No. 7-2.

[10] The longer email exchange which Plaintiff attached to his Response included an additional request for information regarding the transfer, which Defendant responded to. ECF No. 7-2.

agreement that Defendant would, or could, extend the statutory deadline by which the Property could be redeemed.

Furthermore, even if the Court were to find that a contract was formed between Defendant and 5050 Tuxedo, Inc., such an agreement would be unenforceable. Plaintiff's claimed right to redemption arises out of the language in 26 U.S.C. § 6337, which states that "the owners of any real property…or any person having any interest therein" have a right to "redeem the property sold… at any time within 180 days after the sale thereof." 26 U.S.C. § 6337(b)(1). There is nothing in the language of the statute to suggest that the owner of the property and the individual who purchased it at the tax sale could agree to extend the statutory redemption period. As has been stated by the Fourth Circuit, "[i]t is not within the power of the parties to a contract, subject to valid governmental regulation, to frustrate the will of Congress and to ignore pro tanto its legislative fiat." *United States v. Murtaugh*, 190 F.2d 407, 409 (4th Cir. 1951) (holding that defendants were required to make restitution to individuals who purchased homes above the maximum sales price established under the Veteran's Emergency Housing Act of 1946, even though the purchasers agreed to the higher price). Based on the record before it, the Court finds that there is no genuine dispute of material fact regarding the existence of a contract between Plaintiff and Defendant. Thus, Defendant's Motion for Summary Judgment is granted as to the breach of contract claim.[12]

### C. Specific Performance

In light of Defendant's alleged breach, Plaintiff also requests that the Court specifically enforce their contract and order Defendant to transfer title and possession of the Property to Plaintiff. ECF No. 1 ¶¶ 39-40.

---

[12] The Court will also deny, as moot, Defendant's Motion to Strike the affidavit of Tyrone Pate, ECF No. 10, as the Court did not consider the affidavit in reaching its conclusion.

Specific performance is an "extraordinary equitable remedy which may be granted...where more traditional remedies, such as damages, are either unavailable or inadequate." *Heravi v. Gaming Network Sols., LLC*, No. PWG-15-1178, 2016 WL 3753156, at *6 (D. Md. July 13, 2016) (quoting *Archway Motors, Inc. v. Herman*, 37 Md. App. 674, 681 (1977)). This extraordinary remedy "must be based on a valid and enforceable contract." *DeLeon Enterprises, Inc. v. Zaino*, 92 Md. App. 399, 405-06 (1992) (citing *Washington Homes, Inc. v. Baggett*, 23 Md. App. 167, 173 (1974) cert. denied, 273 Md. 720 and 723 (1975)). As the Court has found that a valid, enforceable contract did not exist between the two parties, Plaintiff's request for specific performance is denied.

### D. Quiet Title

Finally, Plaintiff brings a claim for quiet title, seeking to remove "any cloud from [its] title to the [Property]" and demanding that the Court declare Plaintiff to be the absolute owner of the Property. ECF No. 1 ¶ 51.

Under Maryland law, a person in "actual peaceable possession of property" may sue to quiet title when "the person's title to the property is denied or disputed, or when any other person claims ... to own the property ... or to hold any lien encumbrance on it." Md. Code Ann., Real Prop. § 14–108(a). In such an action, however, "the plaintiff, and not the defendant, must prove possession and a legal claim to title *before* the burden is shifted to the defendant to establish superior title." *Porter v. Schaffer*, 126 Md. App. 237, 274 (Md. App. 1999) (emphasis in original). Thus, "the plaintiff bears the burden of proving both possession and legal title." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014) (citation omitted). Here, Plaintiff alleges that it has a superior interest in the property based on its purchase of the Property from Wamo on October 2, 2015. ECF No. 1 ¶ 44. However, any right that Plaintiff may

13

have had in the property expired when it failed to redeem the property during the statutory time period. *See In re Hollar*, 184 B.R. 243, 252-53 (Bankr. M.D.N.C. 1995) (expiration of the redemption period extinguished the debtors' rights in the real property). As Plaintiff has failed to put forward any evidence to demonstrate possession and legal claim to title of the Property, Defendant's Motion for Summary Judgment as to the quiet title claim is granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgement, ECF No. 6, is granted. A separate Order follows.

Dated: March ___, 2017

GEORGE J. HAZEL
United States District Judge